# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENARO O. SALAS,<br><br>         Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>         Defendant.<br>_____ | 1:10-cv-0478 SKO<br><br>**ORDER REGARDING PLAINTIFF'S**<br>**SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1958 and previously worked from 1994 through 2002 at a wrecking yard as a wrecking mechanic pulling parts from cars, cleaning them, and taking inventory. (Administrative Record ("AR") 40.) In 2004, Plaintiff worked on the loading dock at Foster Farms loading trucks and building pallets. (AR 41.) Subsequently, because of his physical limitations, he was moved to a different position and worked scanning barcodes on boxes. (AR 42.) Plaintiff claims he stopped working for Foster Farms because they could not find any work that did not involve repetitive motion. (AR 43.) On August 16, 2007, Plaintiff filed an application for DIB, alleging disability beginning on February 1, 2005, due to bilateral trigger fingers, diabetes mellitus, hepatitis C, obesity and an adjustment disorder. (AR 105-14.)

**A.  Medical Evidence**

On November 6, 2007, Plaintiff was examined by Richard Engeln, Ph.D., a consultative psychologist, who conducted a number of psychological tests. (AR 402.) Dr. Engeln found Plaintiff accepted tasks with good effort and indicated that the scores obtained were an accurate measurement of Plaintiff's functional level. (AR 403.) Based on these tests, Dr. Engeln made the following objective medical findings:

> Obtained intellectual measurements are verbal intelligence borderline range, and visual intelligence low average. Mr. Salas achieved the following IQ estimates on the WAIS-III: Verbal IQ = 71; Performance IQ = 85; Full Scale IQ = 76. Working memory, an immediate memory functioning for non-meaningful material, reflecting processing skills, was measured 85, low average. Grapho-motor reproductions were assessed by means of the Bender Gestalt II norms. Mr. Salas achieved a Standard Score of 115, high average, on the Copy Phase; Standard Score of 95, average, on the Recall Phase. Trials A was completed without error. Trials B was done two-thirds of the way through the instrument successfully, then completed with confusion. Other standard scores on the WMS-III were: Immediate Auditory Memory = 66, mild range of mental retardation; but, Delayed Auditory memory = 74, borderline; Auditory Recognition Delayed = 70, borderline; Immediate visual Memory = 78; Delayed Visual Memory = 72, both estimates borderline range.

(AR 403.)

Based on these findings, Dr. Engeln diagnosed Plaintiff with an adjustment disorder and alcohol abuse which was reported to be in remission. Dr. Engeln opined that:

> Verbally, cognitively, and socially, Mr. Salas is capable of entry level job adjustment, in a context where instructions are unidimensional and normal supervision is provided. Concentration and social skills are adequate for work adjustment. *Mr. Salas is able to perform one-to-two step, simple job instructions, but not able to receive complex or technical job instructions*. There are no psychological restrictions to job adjustment. Any restrictions to job adjustment would be medical-physical.

(AR 404.) (emphasis added).

On December 19, 2007, Raffi Tashjian, M.D., a state agency non-examining physician, reviewed Plaintiff's file. Dr. Tashjian found that Plaintiff was not significantly limited in his ability to understand, remember, and carry out very short and simple instructions, and he was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (AR 410.) Dr. Tashjian concluded, based on the evidence in the medical record – which included Dr. Engeln's opinion – that Plaintiff could complete simple repetitive tasks. (AR 412.)

On April 18, 2008, Archimedes R. Garcia, M.D., a state agency non-examining physician, reviewed Plaintiff's file. Dr. Garcia affirmed the evaluations of Drs. Engeln and Tashjian, stating that Plaintiff was able to perform simple repetitive tasks. (AR 426.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially on January 7, 2008, and again on reconsideration on April 23, 2008. (AR 76-81.) Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*See* AR 82-83.) A hearing was held July 28, 2009, before ALJ Michael J. Kopicki, during which Plaintiff and a vocational expert ("VE") testified. (AR 18-50.)

**1.     Plaintiff's Testimony**

At the hearing, Plaintiff testified that his diabetes makes him feel very tired and that he has trouble maintaining a sugar-free diet. (AR 23-24.) He stated that he stopped drinking, which had helped control his diabetes symptoms a little, but that his blood sugar is still high. (AR 24.) Plaintiff also stated that he experiences numbness and pain in his hands. (AR 24.) Plaintiff testified

that he suffered from back pain, hand and finger pain, elbow pain, and foot pain, and had received pain medication from his doctor, but that the medication only helped for a short while before the pain returned. (AR 24-26.) Plaintiff explained that his hepatitis C also makes him fatigued. (AR 26.)

Plaintiff stated that he needs cataract surgery to repair his sight and is currently on a waiting list to receive it. (AR 27.) In regard to Plaintiff's daily activities, he testified that his wife has to help him shower, shave, and get dressed. (AR 28.) Plaintiff also explained that his wife prepares all his meals for him and that he is incapable of preparing his own meals. (AR 28.) Plaintiff stated that he does not do much housecleaning, and does no laundry. (AR 28-29.) He watches television, but has to get up often because sitting for an extended period hurts his hip. (AR 29.) Plaintiff testified that he relies on his wife for transportation because he does not have a driver's license. (AR 29-30.) Plaintiff does not do any grocery shopping or yard work. (AR 30-31.) With respect to his exertional limitations, Plaintiff estimated that he could walk 30 feet before needing to stop and rest for approximately 10 minutes, stand for approximately 20 minutes, lift 10 pounds, and carry 10 pounds approximately 10 feet before having to stop. (AR 31-32.) Plaintiff also testified that he gets dizzy often. (AR 36.)

### 2. Vocational Expert's Testimony

Judith Najarian, a VE, testified at the hearing. (AR 40-47.) She described Plaintiff's work as a wrecking mechanic as pulling parts, cleaning them off, and sorting them. This position is defined in the Dictionary of Occupational Titles ("DOT") as "heavy and 4, semiskilled."[2] The VE stated that Plaintiff's work loading trucks at Foster Farms was categorized in the DOT as "medium and 2, unskilled," but because Plaintiff testified that the heaviest items he was lifting were approximately 100 pounds, Plaintiff was performing at a heavy level. (AR 42.) The VE believed that Plaintiff's work scanning boxes would be considered "light, 2, unskilled." (AR 43.)

---

[2] According to the DOT, the component rated 4 is the specific vocational preparation ("SVP") required for the work. Level 4 work requires over 3 months up to an including 6 months of vocational preparation. DOT, App. C.II. The reasoning level for this work is rated as a 3.

4

1    The VE testified that a hypothetical person of Plaintiff's age, education and work history,
2 who retained the residual functional capacity[3] ("RFC") to lift and/or carry 20 pounds occasionally,
3 10 pounds frequently; stand and/or walk six hours per eight-hour work day; sit six hours per eight-
4 hour workday; who is limited to frequent handling; should never climb ropes, ladders, scaffolds;
5 could occasionally crouch, crawl, and kneel; and who was limited to simple, routine work activities
6 could not perform Plaintiff's past relevant work. (AR 43-44.) The VE testified, however, that there
7 would be some light, unskilled jobs that could be performed by such an individual. (AR 44.) These
8 included work as a flagger,[4] cafeteria attendant,[5] or mail clerk.[6]

9    When asked to consider a second hypothetical person of Plaintiff's age, education, and work
10 experience, who was able to lift 50 pounds with both hands and no repetitive forceful pulling,
11 pushing, lifting, twisting and grasping with the bilateral upper extremities, the VE testified that this
12 person would not be able to perform Plaintiff's past relevant work, but would still be able to perform
13 work as a flagger, cafeteria attendant, or mail clerk.

### 3.    ALJ's Decision

On November 3, 2009, the ALJ issued a decision that found Plaintiff not disabled from February 1, 2005, through the date of the decision. (AR 16.) In reaching his ultimate decision, the ALJ found (1) Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2010; (2) Plaintiff has not engaged in substantial gainful activity since February 1, 2005, the alleged onset date; (3) Plaintiff has six severe impairments, including a history of bilateral trigger fingers, diabetes mellitus, hepatitis C, obesity, adjustment disorder and a history of alcohol abuse;

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[4] The VE testified that the work of a flagger is "light and 2." Handling is frequent, fingering is occasional, and crouching is occasional.

[5] The VE testified that the work of a cafeteria attendant is "light and 2." Handling is frequent, fingering is occasional.

[6] The VE testified that the work of a mail clerk is "light and 2." Handling and fingering are frequent but not continuous.

5

(4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff has the RFC to perform a range of light work, and can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours and sit six hours in an eight-hour workday; frequently handle with the upper extremities; never climb ladders, ropes, and scaffolds; occasionally crouch, kneel, and crawl; and is limited to simple, routine work; (6) Plaintiff is unable to perform any past relevant work; (7) Plaintiff is considered a younger individual because he was between the ages of 18-49 on the alleged disability onset date; (8) Plaintiff has a limited education and is able to communicate in English; (9) transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that Plaintiff is not disabled, whether or not Plaintiff has transferable job skills; and (10) there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

On December 28, 2009, Plaintiff sought review of this decision before the Appeals Council. (AR 4.) The Appeals Council denied review on January 29, 2010. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**C.   Plaintiff's Appeal**

On March 15, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff seeks a reversal of the final decision of the Commissioner based on allegations that the ALJ failed to properly evaluate Mr. Salas' mental RFC.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* § 404.1520(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* § 404.1520(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or

1  various limitations to perform his past work. *Id.* § 404.1520(f). If not, in the Fifth Step, the burden
2  shifts to the Commissioner to show that the claimant can perform other work that exists in
3  significant numbers in the national economy. *Id.* § 404.1520(g). If a claimant is found to be
4  disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.
5  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520.

## DISCUSSION

### A.   Plaintiff's Contentions

Dr. Engeln opined that Plaintiff's "[c]oncentration and social skills are adequate for work adjustment. Mr. Salas is able to perform one-to-two step, simple job instructions, but not able to receive complex or technical job instructions." (AR 404.) The ALJ considered Dr. Engeln's opinion in formulating his RFC assessment and explicitly determined that Dr. Engeln's statement that Plaintiff is able to perform one- to two-step, simple job instructions was consistent with an RFC limiting Plaintiff to simple, routine work. (AR 15.)

Plaintiff argues that an RFC for simple, routine work is *less* limiting than an RFC for jobs with one- to-two step, simple instructions. Specifically, Plaintiff asserts that an RFC for tasks involving one- to two-step, simple instructions limits Plaintiff to jobs defined by the DOT as involving a reasoning level of 1. As a limitation to " simple, routine work " arguably encompasses DOT reasoning level 2 jobs, the ALJ erred in finding Plaintiff's ability to perform jobs involving one- to two-step, simple instructions is consistent with a limitation for simple, routine work. Thus, the ALJ's RFC determination that Plaintiff retained the ability to perform simple, routine tasks was an implicit rejection of Dr. Engeln's opinion. Further, when the ALJ questioned the VE about jobs available for someone limited to simple, routine work, the VE provided testimony about jobs that exist in significant numbers in the national economy with DOT reasoning levels of 2 and 3 – which is above the level at which Plaintiff can perform.

### B.   DOT Scale for Reasoning Development

DOT job descriptions include a "General Educational Development" ("GED") definition component which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Grigsby v. Atrue*, No. EDCV 08-1413 AJW, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010). The GED component is comprised of discrete scales, including a scale for "Reasoning Development." *Id.* The GED reasoning development scale ranges from Level 1 (low) to Level 6 (high). *Id.* Levels 1, 2, and 3 are defined as follows:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, Appendix C: Components of the Definition Trailer.

**C.  ALJ's RFC Assessment**

At least two district courts in this circuit have considered arguments similar to that which Plaintiff presents. In *Wilson v. Astrue*, the plaintiff argued that a statement by physician Dr. Yang that he was "able to follow 1- and 2-part instructions" was a limitation that was not consistent with the ALJ's RFC assessment finding that the plaintiff was limited to simple, repetitive tasks. No. 09-cv-1765 SS, 2010 WL 3894679, at *9 (C.D. Cal. Oct. 1, 2010). The court found that the ALJ's RFC determination was consistent with the doctor's overall opinion. The court reasoned that the ALJ did not reject Dr. Yang's opinion that Plaintiff could follow one- to two-part instructions, but specifically considered it. *Id.* at *9 ("The ALJ did not specifically reject this limitation and in fact, properly considered it."). The court reasoned that, reading Dr. Yang's opinion in context, the statement that the plaintiff was affirmatively able to perform tasks involving one- to two-part instructions was not an actual limitation to *only* one- and two-step tasks. *Id.* at *10. This was particularly true, the court determined, in light of Dr. Yang's opinion that the plaintiff was also able to complete both simple and complex tasks. *Id.* The court also found that, even assuming Dr. Yang's statement could be interpreted as limiting the plaintiff to tasks with only one- to two-part

9

1  instructions, the plaintiff was not necessarily precluded from performing DOT reasoning level 2 jobs
2  simply because those jobs are defined to include "detailed" but "uninvolved" instructions. *Id*.
3  ("Plaintiff is incorrect in taking the word 'detailed' in the DOT job description to automatically
4  indicate that the jobs at issue are inconsistent with Dr. Yang's one- and two-step instructions
5  limitation"). For those reasons, the court affirmed the ALJ's RFC determination. *Id.*

6  In *Navarro v. Astrue*, No. CV 10-217-PLA, 2010 WL 5313439 (C.D. Cal. Dec. 16, 2010),
7  the court considered a similar issue to that presented in *Wilson*. In *Navarro*, physician Dr. Klein
8  opined that the plaintiff had adequate memory, understanding, concentration, persistence, and pace
9  for simple one- to two- step tasks. *Id.* at *4. However, when determining that the plaintiff had an
10 RFC for "simple work," the ALJ ignored specific portions of Dr. Klein's findings. In particular,
11 the ALJ did not explicitly consider Dr. Klein's statement that the plaintiff was limited to tasks with
12 one- to two-step instructions. Rather, the ALJ simply stated that he relied on Dr. Klein's opinion
13 "in part" in reaching the RFC determination. *Id.* As a result, the ALJ's RFC appeared to be an
14 implicit rejection of Dr. Klein's findings. *Id.* Further, without any statement as to why Dr. Klein's
15 findings were rejected, the court determined it could not conduct adequate judicial review. *Id.*
16 Unlike the court in *Wilson*, the court in *Navarro* concluded that an RFC determination that the
17 plaintiff was limited to "simple work" did not sufficiently encompass Dr. Klein's opinion that the
18 plaintiff could only perform simple one- to two-step tasks. *Id.* at *5. For these reasons, the Court
19 determined that the matter warranted remand to the ALJ for additional findings regarding Dr.
20 Klein's opinion. *Id.*

21 The Court finds that the facts of this case align more closely to *Wilson*, rendering that
22 decision more persuasive. Here, the ALJ did not ignore Dr. Engeln's findings that Plaintiff was able
23 to perform to one- to two-step tasks and instructions as was the case in *Navarro*. Rather, he
24 explicitly acknowledged that finding and made a specific determination that it was consistent with
25 a mental RFC limited the plaintiff to "simple, routine work." (AR 15.) Thus, the facts are
26 distinguishable from *Navarro* where the ALJ did not acknowledge Dr. Klein's findings or consider
27 whether those findings were consistent with the RFC as the ALJ assessed it. Further, here Dr.
28 Engeln did not affirmatively *limit* Plaintiff to one- to two-step tasks. Dr. Engeln stated Plaintiff was

10

*able* to complete such tasks, but was unable to perform complex or technical job instructions. Thus, the affirmative limitation was directed to job instructions that were complex or technical. *See Wilson*, 2010 WL 3894679, at *10 (read in context, doctor's opinion did not indicate a limitation to one- and two-step instructions).

Further, it is within the province of the ALJ to interpret the medical evidence and resolve any ambiguities or inconsistencies that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.* at 1039-40; *Thomas v. Barnhart*, 278 F.3d 947, 954. The ALJ was entitled to interpret Dr. Engeln's findings to formulate his RFC, and he was not required to adopt the exact language used by Dr. Engeln. This is so because Dr. Engeln's finding regarding tasks with one- to two-step instructions was not phrased as a limitation, but rather an affirmative statement of what Plaintiff could do. The actual limitation Dr. Engeln found was one for jobs involving tasks with complex and technical instructions, which is distinguishable from Dr. Klein's findings in *Navarro*. Here, the ALJ's RFC for simple, routine work was a rational interpretation of Dr. Engeln's findings, and thus it must be upheld. *See Andrews* and *Thomas, supra.*

Finally, Plaintiff's mental RFC for simple, routine work has been found to be generally consistent with DOT job descriptions requiring a reasoning level of 2. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning consistent with limitation to simple and repetitive tasks); *Lara v. Astrue*, 305 Fed. App'x 324, 326 (9th Cir. 2008) (someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication beyond reasoning level one). Here, the VE described two types of jobs that Plaintiff could perform, flagger and cafeteria attendant, that are both defined by the DOT as involving reasoning level 2. The VE identified 3,581 flagger jobs in California. (AR 44.) The VE also testified that approximately 11,454 jobs fitting the cafeteria attendant description existed in California. (AR 44.) Additionally, the VE stated that work as a mail clerk existed, but that job is defined by the DOT as involving level 3 reasoning, which includes jobs that deal with problems involving several concrete variables. Jobs involving level 3 reasoning are arguably inconsistent with a limitation for simple, routine work. To the extent that Plaintiff's mental

1  RFC limits him to jobs at reasoning levels 1 and 2, a job at reasoning level 3 is not a job that
2  Plaintiff could actually perform. However, because the VE identified a significant number of jobs
3  that involve level 2 reasoning, any error in identifying work at level 3 reasoning was harmless error.
4  *See Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478-80 (9th Cir. 1989) (concluding
5  that 1,200 jobs was a significant number). Therefore, the ALJ correctly concluded that there were
6  jobs in significant number in the national economy that Plaintiff could perform.

## **CONCLUSION**

8  Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial
9  evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court
10 DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.
11 The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,
12 Commissioner of Social Security, and against Plaintiff Genaro O. Salas.

14 IT IS SO ORDERED.

15 Dated:   **June 28, 2011**                             **/s/ Sheila K. Oberto**
                                                         UNITED STATES MAGISTRATE JUDGE